AO 91 (Rev. 08/09) Criminal Complaint                    Sealed                    FILED by ___ D.C.

APR 10 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. - MIAMI

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 13-2479-AMS |
| John Jones, | ) |
| a/k/a "Cake," | ) |
|  | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 26, 2012__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Conspiracy to Interfere with Interstate/Foreign Commerce by Means of Robbery. |
| 18 U.S.C. § 1951(a) | Interference with Interstate/Foreign Commerce by Means of Robbery. |
| 18 U.S.C. § 924(c)(1)(A) | Possession of a Firearm in Furtherance of a Crime of Violence. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Luis Rubio, Task Force Officer, ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: __04/10/2013__

_____
Judge's signature

Hon. Andrea M. Simonton, U.S. Magistrate Judge
Printed name and title

City and state: __Miami, Florida__



## SEALED AFFIDAVIT

I, Luis Rubio ("Your affiant"), being duly sworn, depose and state as follows:

1. I am a detective with the Miami-Dade Police Department, and have been so employed for the past nineteen (19) years. I am currently assigned to the Robbery Bureau's Street Terror Offender Program (STOP), a joint task force comprised of law enforcement agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Miami-Dade Police Department, and Florida Department of Law Enforcement. As part of my duties with STOP, I am a designate Task Force Officer (TFO) with ATF. My responsibilities include the investigation of a wide variety of violent crimes, including but not limited to commercial robberies and firearms offenses.

2. This affidavit is submitted in support of a complaint charging John JONES, a/k/a "Cake," with interference with interstate and foreign commerce by means of robbery, and with conspiring to do the same, both in violation of Title 18, United States Code, Section 1951(a); and possession of a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A). For the reasons set forth in this affidavit, I respectfully submit that there is probable cause to believe that JONES has committed the offenses described above, and respectfully request that the Court issue the attached complaint charging JONES with those offenses.

3. Your affiant has personal knowledge of the facts set forth in this affidavit, based on my participation in the investigation described below and discussions with other federal, state, and local law enforcement personnel involved in the investigation. The information contained in this affidavit is provided solely for the purpose of establishing probable cause in support of the attached application for search warrant. Accordingly, this affidavit does

not contain all of the facts known to me and to other members of law enforcement concerning this investigation.

4. On November 26, 2012, three (3) black males robbed a Metro PCS store at 4880 N.W. 183rd Street, Miami, Florida. The robbery was captured by the store's surveillance camera. The first robber, who was wearing gray sneakers, was armed with a black and brown AK-47 assault rifle, and the second was brandishing a semi-automatic pistol; both of these men were wearing bandanas that covered only the bottom portions of their faces. The third robber, whose face was uncovered, was not armed. The second robber was a wearing a Navy blue hooded sweatshirt.

5. Inside the store, the first robber held the store's customers at bay in the store's lobby, while the second and third robbers jumped over the sales counter and proceeded to the employee area in the back of the store. There, the second and third robbers demanded that the employees hand over their supply of Galaxy S3 cellular telephones. When the employees answered that the store had run out of the Galaxy S3 phones, the robbers instructed the employees to open the back closet, where the store keeps its cell phones. Once the employees had opened the storage closet, the third robber began placing the store's cell phones into two (2) black bags he had brought with him. In all, the robbers took thirty-one (31) cell phones – approximately six (6) of which were black Metro PCS Cool Pads.

6. The second and third robbers then took the personal cell phones of the store's employees and customers and fled through the front door into a teal-colored Nissan Maxima.

7. A few minutes later, police officers arrived at the scene of the robbery, where they learned that one of the store's employees, whose Apple iPhone had been taken during the robbery, was tracking her stolen iPhone. With the assistance of the employee, the police tracked

the stolen iPhone to a cul-de-sac at N.W. 181st Street and 41st Place, where a teal-colored Nissan Maxima, which matched the description given of the teal-colored Maxima that had been used in the robbery, was parked.

8. When the police ran the teal-colored Nissan Maxima's license tag, they discovered that the car had been reported stolen approximately two (2) hours before the robbery. When the police detected no suspicious activity in the neighborhood, they towed the teal-colored Nissan.

9. The next day, November 27, 2012, Metro PCS informed the investigators that one of the stolen black Cool Pads had been activated approximately forty-five (45) minutes after the robbery. According to Metro PCS, the person who activated the Cool Pad had provided an address of 4471 N.W. 171st Street, Miami Gardens, Florida, 33054.

10. The next day, November 28, 2012, the investigators arrived at 4471 N.W. 171st Street, Miami Gardens, Florida 33054 and spoke with the owner of the residence. The owner confirmed that she lived there with her adopted son, Zakee Doster. The owner told investigators that she knew why they had come and promised to help them find the stolen cellular telephones that Doster and his friend JONES had brought home a couple of days earlier. According to the owner, at least one of the cellular phones was in Doster's bedroom. The owner and Doster each separately consented in writing to a search of the residence. In the written consent form he executed, Doster confirmed that he resided in the residence's northwest bedroom.

11. In Doster's room, on Doster's bed, the investigators found a ZTE N910 Anthem, which investigators confirmed was one of the cell phones that had been stolen during the November 26, 2012 robbery. In addition, inside Doster's dresser, the investigators found a

3

MetroPCS CoolPad smartphone, still in its box, that had also been stolen from the Metro PCS store on November 26, 2012.

13. In Doster's bedroom, the investigators also recovered a Navy blue hooded sweatshirt that looked identical to the Navy blue hooded sweatshirt worn by the second robber during the robbery. Also in Doster's bedroom, the investigators found a pair of grey (or off-white) Nike sneakers that looked to be the same sneakers worn by the first robber during the robbery. According to the owner of the residence, those sneakers belonged to JONES. In a shoebox on the floor of Doster's bedroom, investigators recovered an empty 7.62x39mm magazine.

14. In the yard of the residence, underneath a pile of hurricane shutters, the investigators also found a black and brown AK-47 assault rifle that appeared to be the same black and brown AK-47 that was used during the robbery, together with another 7.62x39mm magazine containing six (6) rounds of 7.62x39mm ammunition.

15. While at the residence, the investigators interviewed JONES' girlfriend, who was also at the residence. According to JONES' girlfriend, on the morning after the robbery – November 27, 2012 – she saw JONES, Doster, and Tyrone Crawford (a/k/a "T-Man") seated in the living room of the residence, watching news reports of the November 26, 2012 MetroPCS robbery. When JONES' girlfriend asked the men why they were watching those news reports, Crawford responded that "we did that," referring to the robbery.

4

16.  Doster was arrested and transported to Miami-Dade Police Department headquarters. Meanwhile, two investigators met with several, but not all, of the victims and showed them three (3) separate photographic lineups: one with a photo of JONES; one with a photo of Doster; and the third with a photo of Crawford. One of the victims, the store manager, identified Doster as the second robber. None of the other victims was able to make an identification.

17.  That same day, investigators showed the surveillance video of the robbery to the owner of the residence located at 4471 N.W. 171st Street, Miami Gardens, Florida 33054. The owner immediately recognized the robber brandishing the AK-47 as JONES, the second robber as Doster, and the third robber as Crawford.

18.  The next day, November 29, 2012, the investigators showed the three (3) photographic lineups to a victim whom they had not met the night before. That victim identified JONES as one of the robbers of the MetroPCS store on November 26, 2012.

19.  In December 2012, law enforcement officers executed a duly issued federal search warrant directing MetroPCS to disclose the contents of the text messages associated with the cellular phone assigned call number (305) 763-7188, a cellular phone known to law enforcement officers to be used by JONES. Records disclosed in response by MetroPCS showed that at 10:51 a.m. on November 27, 2012 (the day after the robbery), JONES sent to the user of phone number (786) 286-9018 the following text message: "A slug tell her we got like 35 phone". The user of phone number (786) 286-9018 replied approximately thirty-seven seconds later with the following text message: "okay". A few minutes later, the user of phone numbe r(786) 286-9018 sent to JONES the following text message: "a sale me one before u get them off". JONES replied via text message approximately twenty-nine seconds later: "Yea".

5

20. I respectfully submit that there is therefore probable cause to believe that JONES has committed a Hobbs Act robbery, and has conspired to do so, both in violation of Title 18, United States Code, Section 1951(a), and did possess a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c). I thus respectfully request that the Court issue the attached complaint and arrest warrant charging JONES with those offenses.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Luis Rubio
Task Force Officer, ATF

Subscribed and sworn to before
me on this 10th day of April, 2013.

HON. ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE